Number 191130, number 191131, and number 191132, Donnell Tomasella v. Nestle USA, Inc., Mars Incorporated et al., and the Hershey Company et al. Thank you. Ms. Brzezinski, good morning. Good morning. Thank you, sir. Good morning. May it please the Court, my name is Elaine Brzezinski and I represent Plaintiff Appellant Tomasella. I'd like to reserve two minutes for rebuttal, please. You may. Thank you. We're here today because almost two decades ago, back in 2001, the chocolate industry promised to eradicate the worst forms of child labor from its West African supply chains by 2005. This deadline was missed. It promised to do it instead by 2008. That became 2010. That became 2020. The Payson Center, which was funded by the Department of Labor to assess the industry's progress towards meeting these goals, found that the percentage of children engaged in the worst form of labor actually increased by 46 percent during this time period, from 790,000 to over 1.1 million, and that more than half of these children are injured in the course of carrying out their duties. The Payson Center also found that industry funding had been insufficient to meet its goals, and I think an interesting example of this is in Nestle's reply brief at six. They talk about the fact that their monitoring program covers- Counsel, I thought this was a 93A case. It is, Your Honor. That's helpful background, but, you know, we have read the briefs. So could you get to the 93A issues? Yes, Your Honor. So as we've discussed in the briefs, there's a duty under Chapter 93A to disclose the material information that's known to the defendants. We've talked a lot about- Is that a general statement, or does that have to do with safety or what the product tastes like, that type of disclosure? It's a general statement, Your Honor, that was made by the Supreme Judicial Court in Underwood, repeated by this court in VHS Realty, and we talked a lot about those cases, also Aspinall in the Regulation 3.16 subsection 2 in the briefs, and so I thought it would be useful today- Excuse me, can I just have a follow-up question? Yes. Is there any case under 93 similar to this? There's not, Your Honor. Okay, that answers my question. Okay. Is there a reason for that? Well, is it similar to this fact pattern? No, there's other cases involving pure omissions like this. VHS Realty is one of those. Well, if it's an omission, does it have to be a duty to disclose it? What would provide the duty? Chapter 93A provides that duty. It's been interpreted to, as this court discussed in VHS Realty, unlike the common law, which required a partial disclosure or something else to give rise to that duty of disclosure, under 93A it's inherent in the statute. What's your best case that you're relying on? Our best cases include VHS Realty, Underwood, Aspinall, the discussion of what the standard is, and even though that was an affirmative misrepresentation case, its discussion of the standard discusses it in terms of the standard for omissions. Okay, we can agree there's no affirmative misrepresentation here. Correct. Okay. So to continue with Judge Torea's line of questioning, there's not a duty to talk about just everything under the sun on packaging, labeling, among other things. There's not enough room on packaging, labeling to do that. So the broad statement about duty doesn't really help us. So let's start defining what the duty is. It's not a misrepresentation. Okay? Go from there. Yes, Your Honor. So we absolutely can't just end with the duty. We look to Aspinall for the elements that must be met, and there are several. There must be an omission. The omission must be material, and that goes to the content of the omitted information. Is it something that's going to have a tendency to influence the purchasing decision? Why is it material? Material. Here we have a study. I think a great example actually is in the Hershey Joint Appendix at page 299, and there you have Senator Harkin talking about, and this is back in 2002,  Why, when someone is at the grocery store buying a chocolate bar, is it material to put in information that child labor is used throughout the world to help harvest cocoa beans? As Plaintiff Thomas-Sala alleges in the complaint, had she known that the worst forms of child labor were used to produce the chocolate, she wouldn't have purchased it. It's material to her decision to enter into the purchase. Could you stay with that for a second? Sure. Because what I'm having difficulty is understanding what your limiting principle is, because, I mean, just sitting here I could think of several dozen things that some consumers would like to know. Suppose the sole owner of the company was devoting all the profits to a political party that the purchaser couldn't stand, or suppose it was coming from a communist country, or suppose it was coming with a country under Sharia. I could imagine you making the exact same arguments, and then I'm starting to think, what's this label look like when we're done? What's your limiting principle that would exclude all these other things? Thank you. That concern was obviously animating the district court and the Ninth Circuit and the FTC. It's a concern that's shared by all. The limiting principle here is, when we go back to those elements, they're laid out in Aspinall. So we've got an omission. It needs to be material. It needs to be likely to mislead. The defendant's got to know about it. The plaintiff's cannot know about it. But how would one of those examples I just gave you not pass all those tests? I don't see them as limiting. I see them, materiality might be the one that might limit, but you've defined material as something that if the consumer knew about it, it might affect their purchase. And all of those examples I just gave you, there would be many consumers, I would assume, who might decide not to buy that company's product if they knew that. Absolutely right. And it's the fourth one that is the limiting principle in this circumstance here. So the Aspinall also requires that, for there to be deception, a consumer must be acting reasonably under the circumstances. And this is where the district court, this is exactly where the district court ended up. The district court said that it was unreasonable for consumers to form any sort of preconception about whether or not the worst forms of child labor existed in the defendant's supply chains. In this unique situation where you have this general consensus in terms of people believing that this is wrong, these sort of abusive labor practices performed by children, that it's wrong, in that situation it is actually appropriate and reasonable for a consumer to think that defendants would not tolerate these sort of practices in their supply chain. On the other hand, if we take your sorts of examples, when we have the situation of personal preference, what sort of religion does someone support? Do they support unions? Do they support a particular political party? In those situations, it's absolutely unreasonable for a consumer to assume that a manufacturer has taken a position one way or another. So the test is if there's an assertion that there is a consensus, that opinion agrees with this, that requires disclosure on product packaging? Well, the standard is whether or not a consumer is acting reasonably under the circumstances, and that's how you look at it. No, no, no. The standard is what a reasonable consumer would view looking at that packaging. If the packaging is silent, wouldn't the reasonable consumer just say, well, if I want information, more information about the cocoa bean industry, I'll look elsewhere? I can find it online. And that was the other main holding of the district court, that it wasn't unfair to not make the disclosure here because defendants have made the information available on their websites. The problem is that consumers obviously are aware of everything on the Internet, and they don't know to look for a problem that they're unaware of. Okay, so your argument has shifted that the packaging must make the consumer aware of problems as to which there is a consensus that there is a problem. Is that what you're arguing? That a consumer, a reasonable consumer, it's reasonable for a consumer to have an expectation about a product when there is such a general consensus that making it in a certain way is wrong, and that there's an assumption that defendants wouldn't tolerate that sort of, a manufacturer wouldn't tolerate that sort of labor abuse in their supply chain. And so in that situation, unlike if it involves some sort of controversial issue, like whether you support easy access to guns or birth control or any sort of heated, contentious political issue, in all of those situations it's not going to be reasonable to assume that a manufacturer has taken a position one way or another. There would be no reason for a consumer to assume that. But in this situation, a consumer... are considered intolerable by U.S. standards. How would a court deal that claim, saying that should be disclosed on the package? Would that be an adequate claim under your view? Well, going back to Asimov, one of the requirements and likely to mislead is whether or not plaintiffs know or consumers know about the issue already. And I think if you're talking about the fact that wages may be lower in Asian countries in making clothes, for example... No, but the work conditions, they don't know. They're exposed to mercury in their water source there in that country where the particular factory is. So consumers wouldn't know that, but most consumers would say, I don't like that. True that most consumers are not going to look favorably upon their being poisoned in the water in another country, but this is... You see, we're having the same difficulty as trying to think how you distinguish those situations and don't create a slippery slope that we all go down with. Right. And that... Yes, John. Answer the question because I have one for you. This is a unique and different situation because it's... This is not one-off of a mercury poisoning or incidence of mercury. It's been such a protracted problem that has gone on for two decades now without solution and really a situation where a consumer acting reasonably under the circumstances would think that this is completely unacceptable and there is consensus that the worst forms of child labor are unacceptable in supply chains. And that's something that they'd expect to be disclosed at the point of sale. You would not expect defendants to commit that. What is in the packaging that is deceptive? I would like to know that. Specifically, what do you see as deceptive in the packaging? The omission, so not disclosing. The omission. Where is there a duty to give that information? What do you base it on? In Underwood, for example, and more recently in Exxon in 2018, the Supreme Judicial Court stated that there's a duty under Chapter 93A to disclose known information that's material to the transaction. And then there's the limiting principles set forth in Aspinall, including whether a consumer is acting reasonably under the circumstances. Thank you. Mr. Nobler, good morning. Good morning. Good morning, Your Honors. Jonah Nobler from Patterson, Belknap, Webb & Tyler for the Hershey defendants. To be clear, nobody here disputes that child labor and slave labor in Ivory Coast are tragic and immoral, but that's not what this case is about. As plaintiff has conceded, this is a 93A case about omissions on product labels and whether the defendants have a duty to emblazon these horrible social conditions on every candy wrapper that they manufacture. Between the district court in this case and the California district courts and the Ninth Circuit, eight federal judges have already looked at this claim and they've already held unanimously that there is no obligation to disclose here. Except here you have another state statute that makes it a little bit different. That's true. There's a slightly different state statute. I would point out that both are drawn from the FTC Act. They use the same language, unfair or deceptive, and they both require looking to FTC precedent, which I'll get to in a second. I'd like to say as a threshold matter, though, that the court doesn't even need to reach the issue of when there's a duty and when there's not because here there was no failure to disclose. This isn't like the cases where there's something that the manufacturer hid from consumers. The complaint itself makes clear that the manufacturers here have all disclosed this problem repeatedly. It's on their website. It's in their corporate responsibility reports. Houses of Congress have passed legislation on it. It's been in newspapers across the country for decades, including in Boston. No, no, no, no, no. The issue is the failure to disclose it on the product packaging. Yes, Your Honor. And so the plaintiff claims that a disclosure only counts under Chapter 93 if it's on the label. She cites no case law for that. We haven't found any case law for that. And it doesn't even make sense because it's a duty. You know, one of the luxuries that counsel has is your job is to win your case. It isn't really to create the law. Here we've got a question of what material information amounts to. And we have to adhere, of course, to state law. But this case does involve the question of defining what is at least not or is material information. So where you could be helpful is in how should a court go about under 93A, not California law, defining what material is. So two answers to that, Your Honor. First, as the district court did, I would look at International Harvester because 93A's text says you have to look at FTC precedent. International Harvester is an FTC decision squarely on point. It acknowledges, as Judge Cayares, you acknowledge, that there's an infinite variety of things that might be material to consumers. So that's not enough. I'm quoting right here from Lexis Star, page 250 of International Harvester. The case says that it has to involve, quote, number one, information bearing on fitness for intended use, or number two, information bearing on significant hidden safety hazards, end quote. That's a direct quote from International Harvester. Hershey submits that would be a perfectly good standard to adopt. That's what the California court adopted. Has the SJC yet adopted that? The SJC has come close, I would say. In the Ehrman decision, which involved a real estate transaction, not a consumer product. But in that case, the Supreme Judicial Court distinguished between physical conditions that are rooted in the land and transient social conditions that may influence a buyer's decision. And there was no dispute that the condition in Ehrman would have influenced the buyer's decision. That was pleaded. But it was not a physical condition rooted in the land that actively interfered with its intended use or caused a safety hazard. So the allegation that it made a difference to her wasn't enough. So Ehrman was a real estate case, but there's no rational reason why a different rule should apply in a consumer product case, in a personal property case. I would say, Your Honors, you don't have to go so far as to lay down a bright line that would answer every case. It would be enough to hold that where the omission, the alleged omission, has solely to do with an ethical or a moral fact that causes offense to someone's morals, that that is comfortably outside whatever the duty to disclose is. That would be enough to resolve this case, leaving the future cases for future times. I see my time's almost up, so I'll turn it over to my colleagues. Thank you. Mr. Merriman, good morning. Good morning, Your Honors. May it please the Court, Brian Merriman for the defendant, Apelli Nestle, USA. Following up on Judge Lynch's question about what is material, the starting place for this Court should be the test for deceptive conduct set forth in Aspinall, quoting Purity Supreme. And there, the Court said, if first there is a misrepresentation, omission, or practice, that second is likely to mislead consumers acting reasonably under the circumstances. That's the deception piece. And third, a separate element, the representation, omission, or practice is material. That's the materiality piece. And then Aspinall also later went on to say a practice may be deceptive if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted. Here, the defendants' product labels did nothing to contribute, let alone cause, as is required, plaintiff's alleged misimpression. In fact, all the defendants disclose on their websites and in other places that child labor may contribute or contributes to some cocoa production in West Africa. Are you suggesting the result would be different if there was no mention on the packaging label and there were no websites? Does your case actually depend on there being websites that discuss this problem? No, Your Honor. I didn't think so. It does not. I think my point was just that that makes this case, pushes it even more to the side of the fact that the omission here. Yeah, well, we have to worry about legal standards. Thank you, Your Honor. So the lack of disclosure here on the chocolate product label is a pure omission, as the FTC has said. A consumer would only have an erroneous belief regarding the presence or lack thereof of child labor in the cocoa supply chain based on a preexisting impression. And this court can look at International Harvester, where it said the FTC announced two policy reasons for not imposing liability based on a pure omission. One, liability for a pure omission would expand the concept of deception, as this panel has noted, beyond limits given the number of issues which consumers may have erroneous preconceptions about. And two, a pure omission doesn't reflect a deliberate or intentional act by the seller. And the FTC's ruling in International Harvester, I think, is a corollary of the SJC's jurisprudence to this point. Deception is about causing someone to believe something that's not true. And I want to note, because it came up in the briefs but hasn't been mentioned yet today, the appellant made a big deal in her reply brief saying the court shouldn't look to International Harvester, the court should look to Cliffdale if the court is going to look to the FTC. Cliffdale and International Harvester were decided in the same year by, in essence, the same panels. Four of the five commissioners were the same. The only reason one was different was one had replaced another. The same commissioner dissented in both. One was decided in March, the other, Cliffdale in March, International Harvester, I'm sorry, one in March, the other in December. And they're in harmony with each other. The same commissioners in the same year were looking at them. The reason that cases such as Aspinall and others cite Cliffdale is likely because Cliffdale was an alleged false statement case and International Harvester was a pure omission case. So, factually, Cliffdale was more similar. But Cliffdale and International Harvester are clearly in harmony with each other, decided by the same commissioners at the same time. In my remaining time, I just want to quickly mention the two elements that haven't come up yet, unfairness and injury. On injury, which the district court didn't get to, but if this court gets to it, it's clearly 93A, injury requires an objective, identifiable harm that goes beyond the deception itself. Do you really want us to get there? No, and it's not necessary, Your Honor. But this court can look to Chalice if it does. With that, my time is up and I'll submit if there are no further questions. Thank you. Thank you. Mr. Horniak, good morning. Good morning, Your Honor. Your Honors, thank you. I'm David Horniak from Williams and Connolly. We represent Mars. I think what is missing from plaintiff's position here is any consideration of, as Mr. Merriman pointed out, causation or that the act of omission on the part of the defendants must in some way be either deceptive or unfair. The very terms in the statute, deceptive and unfair, require not just that the omission harmed the plaintiff in some way, that it involved material information. It's not just focused on the information that was omitted, but also on how it was omitted. And what that issue here is distinguishing between when an omission, when the act of omission is deceptive or unfair and when it's not. Now, the Supreme Judicial Court in Aspinall, I think we all agree, both plaintiffs and defendants, set forth the governing standard. And one component of that standard is a consumer acting reasonably under the circumstances. And that's precisely what the district court keyed in on here, and I would submit keyed in on correctly. Because that standard looks not only to what the consumer believed, but also to what a manufacturer might be required to anticipate a consumer to think. Now, Judge Lynch pointed out earlier on in the argument that if packaging is silent, wouldn't a reasonable consumer look to find some of that information elsewhere? And we would submit in a case like this, absolutely. Because this sort of information is precisely the kind of information that a concerned consumer might not expect to find on the packaging of a tiny candy bar. Suppose you go elsewhere and you go to a website and you see, and I think, if I recall, one of the allegations is Hersey's website says that they have zero tolerance for the worst forms of child labor. And I think there's an allegation that, in fact, that's false. Does that, if that were correct, does that then affect what should be on the package? Or would that simply be a claim for the misrepresentation? You tell us to look elsewhere, but what happens if we find falsehood elsewhere? Well, Your Honor, I think that would be if there was, in fact, a falsehood elsewhere. Now, I'm not aware of any such allegation here, but that would be a separate claim then. I think the issue of what is on the packaging is separate and independent of that. Because, again, if the packaging is silent, the question is not what information the consumer might be able to find elsewhere, but what sort of expectations should the consumer harbor in view of that silence on the packaging. So if it's going to be a separate claim if the elsewhere is false, then why are we even looking elsewhere? Why do you suggest we look elsewhere? Well, because a consumer acting reasonably under the circumstances wouldn't look at just the packaging, you know, five inches of packaging on a candy bar and assume that all of the information they might consider material for their purchasing decision is on that packaging. And I think that's what the FTC and International Harvester was really trying to do. So what if there's no elsewhere? What if there's no website that discusses work conditions in the countries and the water supply for the workers? Well, Your Honor, I think that would be a different case than the one we have here. Well, yes, that's why I asked. How is it different in a relevant manner? Sure. I'm puzzled by your saying that we need to look elsewhere to decide the duty with respect to the package, because that seems to have some complexities here. I thought your brother had explicitly disavowed that when I asked, are you really saying your case depends on there being information elsewhere? And he said no. So you seem to be staking out a different position. I'm sorry, Your Honor. I didn't mean to stake out a different position. I don't think it depends on the information actually being elsewhere. I think what it depends on is whether a reasonable consumer approaching the packaging would expect to find that information on the packaging. Judge Cahill, I don't know if that answered your question or not. And then who decides what a reasonable consumer would decide? Sure. Well, I think the FTC gave some guidance to that. Now, the FTC's distinction, which I think the district court found was a reasonable one, was a distinction between either omissions that are omission of part of a larger statement, so I think they called it a half-truth, or omissions that relate to central characteristics of the product, physical characteristics of the property, or something else that the context of the transaction gives some sort of implied meaning to versus what the FTC characterized as pure omissions. I think my time is up here. Thank you. Two points, Your Honors. The first, International Harvester was decided in 1984. In 1985, in VHS Realty, this court discussed an omission case. And again, in 1993, the Supreme Judicial Court in Underwood discussed omissions, and in neither of those instances did either look to International Harvester. The second point is really to reiterate and conclude that this is a unique situation where you do have this. And I'd actually like to quote from a decision by the Federal Circuit McKinney from 1986. It says, The moral and ethical interest in avoiding the purchase of foreign goods produced by forced labor is shared by most, if not all, of the domestic populace. And so it's a unique situation where that occurs, where everyone actually agrees on something. Well, the question is whether it is the right forum to attack it. There's an e-mail I just got about the fact that at this time, you may be aware of it better than I am, that the U.S. Customs is in Africa investigating this situation to see is that the best way of approaching this problem? Well, consumers can have an effect here. And after two decades of insufficient progress having been made, and who knows the outcome of what's going on under the Tariff Act now, but there's power in the pocketbook. And for consumers to be able to know what's going on and make a choice not to support the worst forms of child labor, that could be important and effective in changing the outcome here. And I just wanted to follow up on the mercury example. If there's widespread contamination to a community's water supply over a long period of time such that the general populace thought that was important and there was general agreement on that, then it would be a consumer acting reasonably under the circumstances, as Aspinall requires, to believe that a manufacturer wouldn't tolerate such a practice. I see my time is up. Thank you, Your Honors. Thank you.